UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

IN RE: CHAPTER 11

**TOBY PRIMEAUX** CASE NO. 10-50989

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

### DEBTOR'S FIRST AMENDED PLAN AND DISCLOSURE STATEMENT

NOW INTO COURT, through undersigned counsel comes TOBY PRIMEAUX Debtor(s)-in- Possession, who presents the following Combined Plan and Disclosure Statement:

On June 25, 2010, TOBY PRIMEAUX (PRIMEAUX) filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Louisiana, Lafayette-Opelousas Division.

After the filing of the bankruptcy petition, PRIMEAUX was authorized to continue in business under the protection of the Bankruptcy Code and to attempt to work out an arrangement with creditors on a plan for the repayment of his debts. This document explains how PRIMEAUX proposes to pay creditors. If the Bankruptcy Court approves this plan, the creditors' right to collect their debt will be limited by federal law (the Bankruptcy Code). If the plan is approved, creditors will only be allowed to collect from PRIMEAUX as provided in this document.

### 1. Why did TOBY PRIMEAUX file this Bankruptcy Case?

PRIMEAUX is an individual. He is the owner of several small corporations. Unlimited Supply, Inc. This is an oilfield supply company and is Mr. Primeaux's current source of income. Mr. Primeaux owns 50 shares of stock out of 100 shares outstanding. Podnuh's Hunting Club,

LLC. This is only a shell for a hunting lease. Unlimited Supply of Baton Rouge, LLC, still operating, no source of income to the debtor. Total Parts and Supply, LLC. , not operating, has filed for liquidation. Unlimted Pumps and Supply, LLC., has filed for liquidation. T & E Investment, LLC owns the building in which Unlimited Supply, Inc. is located.

The reason Debtor filed for protection under the Bankruptcy Code was twofold , firstly, Unlimited Pumps and Supply, LLC was formed by the Debtor on June 7, 2007. The business was purchased form Ronnie Cockerhan. The business was a pump rental business for the oil field. The Debtor was unfamiliar with the pump business. At the time of filing for protection Mr. Cockerhan was owed approximately $1,937,177.00. The company was not doing well and Mr. Cockerhan filed suit against the Debtor and was pursuing a judgement.

The Debtor's earns money from his operation of Unlimited Supply, Inc. This company supplies the oil field with supplies. Prior to the filing of the case the oilfield was on a down turn, business was slow, the BP rig exploded, the government placed a halt on deep water drilling and the granting of permits for drilling in the Gulf of Mexico. Sales were slow and the Debtor could not afford to stay current to creditors along with the pressure being placed on the Debtor by Mr. Cockerhan effectively forced the filing of Bankruptcy.

Cindy Durel is the exwife of the Debtor. She is owed an equalizing payment from the division of the community in excess of $1.5 million. Because of the slow down of the business the Debtor could not maintain payments to Ms. Durel.

**ASSETS OF THE DEBTOR and LIQUIDATION VALUE:**

Other than the corporate interest above the Debtor is the registered owner of real estate and

its improvements physically located at 7401 W. Congress Street in Duson, Lafayette Parish, Louisiana. This is the Debtor's residence which he shares with his wife and two children. The residence is valued at $340,000.00. There is a mortgage on the home to Abbeville Building and Loan in the amount of $331,779.00 leaving equity of approximately $8,221.00 which is below the Debtor's homestead exemption.

The Debtor's non exempt property consist of a boat, four wheeler, tractor, jet ski, personal property including jewelry and cash on hand valued at approximately $44,900.00. There is a debt due and owing on the Stingray boat, motor and trailer to GE Money Bank of $37,381.70 of which $20,695.00 is secured. Liquidation value of the non exempt items are $22,900.00.

Unlimited Supply, Inc., the Debtor's source of income, is very heavy with debt. Mr. Primeaux currently owns 50 shares of stock in the corporation of which 25 shares are pledged as security to Mr. Primeaux's x wife, Cindy Durel.

T & E, Investment, LLC is entirely owned by Primeaux. The LLC owns the building in which Unlimited Supply, Inc. is housed. Because of the downturn in the economy and the real estate market there is no equity in the property.

2. <u>What has happened since the Bankruptcy Case was filed?</u>

The Debtor has filed schedules with the Bankruptcy Court that are believed to list all assets and Debts. These Schedules included an election by the Debtor to be treated as a Small Business. As a result of same, the Debtor is entitled to file this combined Plan and Disclosure Statement and set same for hearing on an abbreviated basis. The Bankruptcy Court approved the application of William Vidrine, with Vidrine & Vidrine, PLLC, as general counsel for the Debtors. The Bankruptcy Court approved the application of the Debtors to continue to pay post petition house

notes, and other related expenses including insurance policies for the house and boats. Lance Crappel, CPA, was approved and allowed to become employed by TOBY PRIMEAUX to assist in the financial and accounting requirements associated with a Bankruptcy filing. The Bar date to file proofs of claims was the 26th day of October, 2010. The Debtor has filed operating reports which indicate a positive cash flow.

3. **How does PRIMEAUX propose to pay his debts?**

   **a. The Creditors are divided into classes**

   The Bankruptcy Code requires PRIMEAUX to divide its creditors into classes. Creditors with the same legal rights must be put into the same class. In this case, each secured creditor (a creditor with a lien or mortgage on movable or immovable property) has different legal rights, so each secured creditor is put in a separate class. The Debtor's Bankruptcy Lawyer and Accountant are put in a separate category for administrative creditors, creditors who have assisted with this Bankruptcy Case. Priority tax creditors and other Claims of taxing authorities are also put in a separate category. All other creditors, the "unsecured creditors," are also placed into a separate class.

   **b. How much and when does TOBY PRIMEAUX propose to pay creditors?**

   This disclosure statement and plan outlines PRIMEAUX'S proposed payment schedule to creditors.

   All of the Assets of the Reorganized Debtor, including all furniture, fixtures, equipment, intangibles, movable property and immovable property will remain in the possession of PRIMEAUX free and clear of any mortgage, lien, judgment and/or other encumbrances, none of which will be recognized and maintained under this plan, unless provided for herein.

PRIMEAUX will receive a discharge after completion of all payments called for in this plan.

The United States Trustee's fees do not require allowance by the Court. Both pre-confirmation and post-confirmation UST fees shall be paid in cash and in full pursuant to all applicable provisions of the Bankruptcy Code and other statutory provisions when the order of confirmation of this case becomes final. The Debtor will be required to continue to file monthly operating reports and shall pay quarterly fees to the UST until this case is closed, converted or dismissed.

**Administrative Claims**– Administrative claims, including claims of PRIMEAUX's lawyer and accountant, will be paid in full in cash on the effective date of the Plan.

**Priority Tax Claims**– PRIMEAUX does owe priority claims to the State of Louisiana, Department of Revenue. All priority tax creditors will be paid the full amount of their priority tax claims within six (6) years of the confirmation of this plan. The first payment will be thirty (30) days after the effective date of this plan. The effective date of the plan will be upon confirmation and the following payments thereafter will occur on a quarterly basis. Interest will continue to accrue on the priority claims at the federal statutory rate.

**State of Louisiana:**                                    Allowed claim: $90,077.25

**Class 1–Secured Claim Abbeville Building and Loan;**    This claim is the mortgage holder on the Debtor's residence. This claim is unimpaired and will continued to be paid by the Debtor outside of the plan. The mortgage will not be altered, is unimpaired and will remain in full force and effect. The claim is $330,113.37. The Debtor's monthly obligation is $2363.10 which includes insurance and taxes.

**Class 2 - Secured Claim of Standard Mortgage Corporation:** The claim of Standard Mortgage Corporation is secured by a home located in Carrollton Park Subdivision in Lafayette Parish Louisiana. The home was transferred to Cynthia Paschal Primeaux by community property partition between the parties in conjunction to their divorce filed of record in the records of the Clerk, Lafayette Parish, March 27, 2009. The Debtor contends that this debt is unsecured to him. Primeaux will surrender all of his interest in and to the property in full satisfaction of the debt to Standard Mortgage Corporation.

**Class 3. - Secured Claim Cindy Durel:** Cindy Durel has a non dischargable secured claim by virtue of a community property partition executed by she and Primeaux and filed of record in the Clerk of Court's office, Lafayette Parish, Louisiana dated March 27, 2009. The claim is for $1,541,376.03. The claim is secured by a stock pledge of 25 shares of Unlimited Supply, Inc. The stay was lifted in favor of Ms. Durel allowing her to proceed with her state court remedies. Her claim is fully secured by Stock in Unlimited Supply, Inc. The Debtor surrenders all collateral to Ms. Durel in satisfaction of the Debt.

**Class 4 Secured claim of GE Money Bank:** GE Money Bank holds as collateral the Stingray boat, motor and trailer. The claim is secured in the amount of $20,695.00 and unsecured for $16,686.70. The Debtor will surrender the boat, motor and trailer to GE Money Bank in full satisfaction of the secured portion of the claim. GE Money Bank will retain the unsecured claim.

**Class 5. Unsecured Claims:** All allowed unsecured claims will be paid a pro-rata portion of $1500.00 per quarter until all allowed unsecured claims are paid in full or a total of $30,000.00 has been paid, whichever occurs first. The first payment will be made beginning the last month of the first quarter after confirmation of the plan. Payments will be made in the

months of March, June, September and December of each year. The payments will be completed in five years. The payments listed below assume that amount listed on the creditor's proof of claim is accurate for undisputed claims and that all disputed claims are disallowed or paid by insurance proceeds, if any. If any disputed claim is allowed and not paid by insurance proceeds, then that creditor will receive a pro rata share of $1500.00 per quarter and the payments on all other allowed claims will be reduced accordingly. Based on unsecured claims these payments will result in a 1% **dividend** to unsecured creditors. All additional disposable income will be paid to the unsecured creditors, if any. The following is a list of unsecured creditors who filed claims and the Debtor's proposed treatment of those claims.

| | |
|---|---|
| **Nissan Motor Acceptance Corporation** | Allowed claim of $12,860.76 |
| **Regions Bank** | Allowed claim of $1,520.91 |
| **Advanta Bank Corp:** | Allowed claim of $31,605.48 |
| **Citi Bank South Dekota** | Allowed claim of $45,863.16 |
| **Chase Bank USA, N.A.** | Allowed claim of $31,533.74 |
| **Iberia Bank** | Allowed claim of $ 111,799.67 |
| **BankcorpSouth** | Allowed claim of $36,788.05 |

DEBTOR'S COMBINED PLAN AND DISCLOSURE STATEMENT

| | |
|---|---|
| **Fia Card Services** | Allowed claim of $30,640.52 |
| **GE Money Bank Lending, Inc.** | Allowed claim of $ 16,686.70 |
| **Ronnie Cockerham**: | Allowed claim of $1,937,177.00 |
| **GE Money Bank** | Allowed claim of $9,332.12 |
| **State of Louisiana, Department of Revenue** | Allowed claim of $26,000.29 |

**CLAIMS NOT FILED:**

Claims not filed by the bar date will be disallowed and those creditors will not receive a distribution under the plan. The debt will be discharged at the completion of the plan. Any collateral held by a secured creditor, who does not file a claim, will be turned over to the debtor at the completion of the plan by surrender of any and all titles and/or proof of ownership free and clear of any liens, encumbrances and/or mortgages.

**DISPUTED CLAIMS:**

Ford Motor Credit Company, LLC has filed two secured claims, claim 21 and claim 22. These claims are secured by trucks used and paid for by Unlimited Supply, Inc. The stay was lifted in favor of Ford Motor Credit Company, LLC. These claims are not treated in this plan.

**c. Future Management and ownership**

PRIMEAUX is the owner and operator of a small business known as Unlimited

Supply, Inc. and he will continue to manage all of the affairs of the business, post confirmation. He will continue to be compensated at a rate that will allow his to make the required monthly fixed obligations and the obligations of the plan.

### d. Creditors have the right to vote on the plan

After reading this plan and disclosure statement, creditors will have the right to Vote on whether the Bankruptcy Court should "confirm" this plan. Each creditor should read this combined plan and disclosure statement carefully, discuss it with a lawyer, and then fill out the ballot, when provided. PRIMEAUX 's lawyer will assemble the ballots and report to the Bankruptcy Judge. At that time, the court will conduct a confirmation hearing in this case and decide whether to confirm the plan.

### e. Creditors also have the right to object to this Disclosure Statement and/or object to confirmation of the plan

If a creditor believes that the Combined Plan and Disclosure Statement does not contain sufficient information to decide whether to vote for (or against) the plan, the creditor may file a written objection with the Bankruptcy Court. If a creditor believes that the plan does not meet the requirements of the Bankruptcy Code, then the creditor may also file a written objection with the Bankruptcy Court. The deadline for filing objections will be provided at a latter date.

### f. The Court may approve this plan and limit creditors' legal rights

The Court will only consider ballots and written objections that are timely filed. If no objections are timely filed, or if the Court overrules all objections, and at least one class of creditors accepts the plan, the Court may approve the plan. If the Court approves the plan, all creditors will be bound, even if a creditor did not vote or even if a creditor voted against the

DEBTOR'S COMBINED PLAN AND DISCLOSURE STATEMENT

Page 9 of 13

10-50989 - #138 File 06/24/11 Enter 06/24/11 14:56:38 Main Document Pg 9 of 13

plan. This means that a creditor will not be allowed to collect its claim against PRIMEAUX except as provided for in the plan.

### g. How does a class accept the plan?

Each class is considered separately. Only the creditors who vote are counted. The Court will conclude that a class "accepts" the plan only if two requirements are met: 1) More than 50% of the voting creditors in that class vote in favor of the plan; and 2) Those creditors voting in favor of the plan hold at least 2/3 of the total amount of the debt that is voted.

### h. What if a creditor is not listed in This Plan

All unsecured creditors who have filed a claim are listed herein. The proof of claim deadline has been set by the court. All unsecured claims that PRIMEAUX agrees to pay (or that are disputed) are listed. If a creditor's claim is not listed and/or a creditor fails to timely file a claim with the Bankruptcy Court, PRIMEAUX will not pay any money to that creditor, but that creditor's claim will nevertheless be discharged (that is, the creditor will not be allowed to collect any money from PRIMEAUX). If a creditor believes this provision violates its legal rights, the creditor should contact a lawyer and file an objection with the Court.

### i. What to do for more information?

Creditors should talk with a lawyer about their rights and responsibilities in this case. A creditor should have its lawyer call TOBY PRIMEAUX'S lawyers, who may be contacted as follows:

**William C. Vidrine**
**Vidrine & Vidrine, PLLC**
**711 W. Pinhook Road**
**Lafayette, LA 70503**
**337-233-5195**
**WilliamV@Vidrinelaw.com**

DEBTOR'S COMBINED PLAN AND DISCLOSURE STATEMENT

Page 10 of 13

10-50989 - #138 File 06/24/11 Enter 06/24/11 14:56:38 Main Document Pg 10 of 13

If a creditor does not have a lawyer, he can call PRIMEAUX's lawyers directly. REMEMBER THAT PRIMEAUX's LAWYERS CANNOT GIVE CREDITORS LEGAL OR FINANCIAL ADVICE BECAUSE THEY REPRESENT PRIMEAUX, NOT CREDITORS.

### j. Preferences and Fraudulent Transfers.

After a review of its records, PRIMEAUX does not believe that any actionable claims exist for preferences or fraudulent transfers against any insiders or any other persons. Thus, PRIMEAUX does not intend to pursue any preference or fraudulent conveyance causes of action after confirmation.

### 4. Does TOBY PRIMEAUX have enough money and earnings to make the payments called for in the plan?

Yes. PRIMEAUX believes she will have sufficient income from operations to make its payments to all creditors. PRIMEAUX has performed well during this Chapter 11 case and has sufficient income to make plan payments. PRIMEAUX history shows that she can make the payments.

### 7. Rejection of Executory Contracts and Unexpired Leases.

PRIMEAUX has no executory contracts or unexpired leases.

### 8. Are thise any alternatives to the plan?

The only alternative is liquidation under Chapter 7. In a liquidation scenario, unsecured creditors will receive less than they would under a Chapter 11 Reorganization. Liquidation under Chapter 7 also in PRIMEAUX additional

DEBTOR'S COMBINED PLAN AND DISCLOSURE STATEMENT

Page 11 of 13

10-50989 - #138  File 06/24/11  Enter 06/24/11 14:56:38  Main Document  Pg 11 of 13

administrative costs, including fees for a Chapter 7 trustee and his/his lawyers and accountants, real estate agent, which could substantially reduce the value of any distributions to creditors. Unsecured Creditors would receive at most $22,900.00 in a Chapter 7 liquidation versus $30,000.00 under the Chapter 11 Plan.

### 9. Is thise any risk that the plan might not succeed?

The revenues derived from operations may not be sufficient to make all payments due under the plan payments. There is some chance that PRIMEAUX may not be able to operate its business at a profit. But PRIMEAUX believes it can do this and will try its utmost to ensure that all creditors are paid as per the plan.

### 10. Are thise any tax effects from this plan?

Tax Effects for the Debtor: PRIMEAUX believes that it will suffer no unexpected tax effects from this plan or due to the fact that it has become insolvent.

Tax Effects to Creditors: PRIMEAUX also does not believe that Creditors will have any tax effects as a result of the filing of this Bankruptcy Proceeding or the confirmation of this plan. It is possible that some of the Creditors may be able to deduct some of PRIMEAUX debt as a bad debt expense but that would only be for certain creditors on an accrual accounting basis. However, each Creditor should consult with its own tax advisor to be sure.

### 11. Please vote for this plan

PRIMEAUX asks that creditors vote in favor of this plan because it will allow the Debtor to pay creditors more than they would receive in a Chapter 7 case.

RESPECTFULLY SUBMITTED

TOBY PRIMEAUX


By: /s/ TOBY PRIMEAUX




By: /s/ William Vidrine

WILLIAM VIDRINE (21398)
Attorney for TOBY PRIMEAUX
711 W. Pinhook Road
Lafayette, La 70503
Phone (337) 233-5195
Fax: (337) 233-3897

DEBTOR'S COMBINED PLAN AND DISCLOSURE STATEMENT

Page 13 of 13